UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**PATRICK DWYON JONES, Kinship of Coosa Nation of North America (USA)**

  Plaintiff,

v.              Case No: 5:22-cv-482-GAP-PRL

**DAVID RAMOS, FNU BERLYNE, PATRIENA ALLEN, JONATHAN LAMONT OWENS, SR , KWAVIUS LENARD WILLIAMS, JONATHAN LAMONT OWENS, JR , USAA CASUALTY INSURANCE COMPANY, STATE OF FLORIDA and SUMTER COUNTY SHERIFF,**

  **Defendants.**

_____

**REPORT AND RECOMMENDATION**[1]

  Plaintiff, Patrick Dwyon Jones, who is proceeding *pro se*, filed this action against USAA Casualty Insurance Company, the State of Florida, the Sumter County Sheriff, and various individuals, including two law enforcement officers and private citizens. Plaintiff seeks to proceed in forma pauperis. (Doc. 2). Due to numerous deficiencies in the original complaint (Doc. 1), the Court took Plaintiff's motion under advisement, and in an abundance of caution, Plaintiff was granted leave to file an amended complaint. (Doc. 4). Plaintiff has

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

now filed an amended complaint (Doc. 5). Because Plaintiff has not cured the deficiencies in the original complaint and the amended complaint fails to state a claim upon which relief can be granted, the undersigned recommends that Plaintiff's amended complaint be dismissed as frivolous.

## I. Legal Standards

An individual may be allowed to proceed in forma pauperis if he declares in an affidavit that he is unable to pay such fees or give security therefor. 28 U.S.C. § 1915(a)(1). However, before a plaintiff is permitted to proceed in forma pauperis, the Court is obligated to review the complaint to determine whether it is frivolous, malicious, fails to state a claim upon which relief may be granted[,] or ... seeks monetary relief against a defendant who is immune from such relief. *Id.* § 1915(e)(2). If the complaint is deficient, the Court is required to dismiss the suit sua sponte. *Id.*

## II. Discussion

This action arises out of an automobile accident that occurred near the Webster Flea Market on February 17, 2022, following which Plaintiff was investigated and arrested for insurance fraud. A review of the amended complaint reveals that it still contains the fatal deficiencies observed in the original complaint.

Plaintiff's amended complaint (Doc. 5) consists of 99 pages, plus an additional 86 pages of exhibits. Included among Plaintiff's filings are the first pages of both a form Complaint and Request for Injunction and a form Complaint and Request for Relief, each of which identify different defendants. (Doc. 5 at 1-2). The defendants include Kwavius Williams, Jonathan Owens, Sr., USAA Casualty Insurance Company, Patriena Allen, Jonathan Owens, Jr., Florida State Troopers David Ramos and Rodger Berlyne, District

Attorney William Gladson, "State Assistant Attorney" Stephen Fern, and the State of Florida. (Doc. 5). Plaintiff has also included an "Affidavit of Truth, a "Notice to Amend Parties in Request for Emergency Injunction and Injunctive Relief," an "Addendum Affidavit of Truth," a flash drive, and numerous other documents and exhibits, including medical records, correspondence, and documents regarding Plaintiff's kinship with the Coosa Nation-State of North America. (Doc. 5-1).

As best can be discerned from the amended complaint, Plaintiff alleges that he was a passenger in a vehicle that was involved in an accident in the vicinity of the Webster Flea Market on February 17, 2022. Plaintiff contends that he was thrown from the vehicle, suffered injuries, and left the scene while disoriented. He asserts that he returned later but was unable to convince authorities that he was a passenger in the accident vehicle. Plaintiff alleges that he was investigated for insurance fraud and was later interrogated and subjected to racial profiling. He alleges that, on July 1, 2022, Florida State troopers kidnapped him under the guise of an interrogation, and that he was arrested and taken to the Sumter County Jail.

Plaintiff alleges that Trooper Berlyne "attacked me by grabbing me from behind in a chokehold and bending me backwards." (Doc. 5 at 9). He also alleges that Trooper Ramos "forcibly pulled both arms backward, as he called for backup stating I was running." (Doc. 5 at 9). In his "Addendum Affidavit of Truth," Plaintiff offers similar allegations about the incident, and states that Trooper Berlyne put him in a chokehold, while Trooper Ramos grabbed his arms and bent them behind his back. (Doc. 5 at 55). He further alleges that he was dragged from one side of the carport to the other. (Doc. 5 at 55). Plaintiff alleges he had to wait in the back of Trooper Ramos's vehicle for about 20 minutes before being taken to

jail, and that he complained that the handcuffs were too tight, but that Trooper Ramos responded, "they were fine." (Doc. 5 at 57).

Plaintiff has also submitted a flash drive with video footage of the incident, however, the video footage does not appear to include the chokehold or grabbing of Plaintiff's arms. Rather, the videos appear to depict later events, including Plaintiff being escorted toward the officers' vehicle and Plaintiff being patted down. (*See* Exhibit to Doc. 5, flash drive).

Plaintiff alleges he "was placed in a cage," had to "get bonded out," and was subjected to embarrassment and "more interruptions of having to visit by force by way of the Florida State Attorney William M Gladson and Assistant Attorney Stephen A Fern, the Fifth Judicial Circuit Court STATE OF FLORIDA in Sumter County with Mary Pavloff Hatcher Judge." (Doc. 5 at 9). Notwithstanding these allegations, it is unclear whether proceedings in state court ensued.

### A. Federal Rules of Civil Procedure

As an initial matter, Plaintiff's complaint still does not meet the pleading requirements set forth in the Federal Rules of Civil Procedure. Plaintiff's complaint does not contain a short plain statement of the claim showing that the pleader is entitled to relief, as required by Rule 8. Instead, Plaintiff's complaint is replete with dubious legal conclusions, argument, and conjecture. Further, although Plaintiff has provided a lengthy narrative of facts and voluminous exhibits, it is not clear as to which legal claims the various facts relate. For that matter, it is not even clear what legal claims are brought, much less which defendants are sued in which claims. Although Plaintiff is proceeding *pro se*, he is "still required to conform to procedural rules, and the court is not required to rewrite a deficient pleading." *Washington v. Dept. of Children and Families*, 256 F. App'x 326, 327 (11th Cir. 2007).

### B. Failure to Allege a Claim for Relief Under 28 U.S.C. § 1983

Due to the deficiencies noted above, as well as the sheer volume of Plaintiff's allegations, the Court's review under § 1915 is challenging. "[A] court, of course, should not abandon its neutral role and begin creating arguments for a party, even an unrepresented one." *Sims v. Hastings*, 375 F. Supp. 2d 715, 718 (N.D. Ill. 2005) (citing *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). A district court may not rewrite a pleading to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). When read liberally, a pro se pleadings "should be interpreted 'to raise the strongest arguments that [it] suggest[s]." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

#### 1. *Excessive Force*

Although Plaintiff's amended complaint falls well short of the requirements of the Federal Rules of Civil Procedure, the strongest argument it suggests is that Trooper Ramos and Trooper Berlyne used excessive force during the arrest in violation of the Fourth Amendment.

To state a claim for relief under 28 U.S.C. § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Fourth Amendment jurisprudence recognizes that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. M.S. Connor, et al.*, 490 U.S. 386, 396 (1989). As a result, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (citation and internal quotation marks

omitted); *see, e.g., Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (in the course of arrest, officer handcuffed plaintiff in a manner that caused him injury and pain); *Nolin v. Isbell*, 207 F.3d 1253, 1255, 1258 & n. 4 (11th Cir. 2000) (during the course of arrest, officer grabbed plaintiff and shoved him against a van, kneed him in the back and pushed his head against the van, searched his groin area, and then handcuffed him).

Here, Plaintiff alleges that Trooper Berlyne put him in a chokehold while Trooper Ramos grabbed his arms and bent them behind his back. He also complains that he was dragged across the carport, was required to wait for 20 minutes in the officers' vehicle, and that the handcuffs were too tight. These examples are the extent of the excessive force that Plaintiff alleges was used by Trooper Berlyne and Trooper Ramos.[2] Even if the Court accepts these allegations as true, they are not sufficient to support a claim for excessive force in violation of the Fourth Amendment.

The Supreme Court has established factors for courts to evaluate in considering claims of excessive force. The factors include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Considering these factors and Plaintiff's allegations, at best Troopers Berlyne and Ramos used what can be described as "de minimus" force to arrest Plaintiff. In the process of arresting Plaintiff, the officers used a chokehold and restrained Plaintiffs' arms

---

[2] The Court notes that even though Plaintiff has submitted a flash drive purporting to contain video footage of the arrest, the use of force alleged by Plaintiff is not depicted on the video. Rather, the video appears to depict events that followed, such as Plaintiff being patted down and led toward a law enforcement vehicle. Notably, the video does not appear to depict any actions that could be construed as the use of excessive force by law enforcement. (*See* Exhibit to Doc. 5, flash drive).

behind his back. Plaintiff had not yet been handcuffed when this force was used, and the officers did not have the benefit of knowing whether Plaintiff was carrying a weapon or how he would react. *See Lockhart v. Lebron*, No. 19-CV-60326, 2019 WL 1996016, at *4 (S.D. Fla. Apr. 17, 2019), *report and recommendation adopted as modified*, No. 19-CV-60326, 2019 WL 1992993 (S.D. Fla. May 6, 2019).

In *Lockhart*, the court considered allegations like those brought here, including that the plaintiff was placed in chokehold and forced to the ground, causing injury. *Id.* Concluding that the force used was de minimus, the court reasoned:

> [T]hese actions are not necessarily uncommon nor excessive. While the Plaintiff did not resist arrest, in the Eleventh Circuit, we recognize that the typical arrest involves some force and injury." *See Nolin v. Isbell*, 207 F.3d 1253, 1257–58 (11th Cir. 2000). "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez v. Farrell*, 280 F,3d 1341, 1352 (11th Cir. 2002). Once handcuffed, the Plaintiff does not allege that any excessive force was used; rather, he alleged that he was simply placed in the patrol car and transported to jail.

Id. at *4.

Here, the use of force allegedly used by Troopers Ramos and Berlyne was less than in *Lockhart,* as Plaintiff was not forced to the ground. And, unlike in *Lockhart*, Plaintiff's own allegations suggest that he was either attempting to evade arrest by running, or that the officers perceived that he was. Plaintiff alleges that Ramos "forcibly pulled both arms backward, as he called for backup stating I was running." (Doc. 5 at 9). Further, as already observed, the force appears to have been applied before Plaintiff was handcuffed. Consideration of the relevant factors together with the facts and circumstances presented here results in the conclusion that the use of force was reasonable or, as the *Lockhart* court concluded, de minimus. Therefore, even if the allegations of Plaintiff's amended complaint are accepted as

true, the Plaintiff still has not stated a claim for violation of the Fourth Amendment upon which relief may be granted.

### 2. *Arrest Without Probable Cause*

The only other claim arguably suggested by the amended complaint is that Plaintiff was unlawfully arrested or arrested without probable cause. Indeed, Plaintiff devotes countless pages of his "Affidavit of Truth" in support of his contention that he was a passenger in the vehicle involved in the accident and that he sustained injuries. For example, he offers a detailed recitation of the events surrounding the accident, including Google Timeline data to support his version of events. Presumably, Plaintiff offers this information to suggest that the actions of Trooper Berlyne and Trooper Ramos were unlawful, or that they had no basis to investigate him or arrest him for insurance fraud. Most of Plaintiff's allegations and his supporting information, however, is irrelevant to a claim based on false arrest.

In a § 1983 claim based on false arrest, the pertinent inquiry is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense. *See generally Rankin v. Evans*, 133 F.3d 1425, 1435-36 (11th Cir. 1998); *Marx v. Gumbinner*, 905 F.2d 1503 (11th Cir. 1990). For probable cause to exist, "an arrest must be objectively reasonable under the totality of circumstances." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1119 (11th Cir.) *cert den'd*, 506 U.S. 832 (1992); *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) ("Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances."). This standard is met when the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that a suspect had committed, is

committing, or is about to commit an offense. *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995).

Despite having the opportunity to amend the complaint, Plaintiff fails to allege that Trooper Berlyne and Trooper Ramos lacked probable cause or that the arrest was objectively unreasonable. Further, Plaintiff's narrative and supporting documents suggest that the officers had an objectively reasonable basis for conducting their investigation and the arrest. For example, Plaintiff proffered a Florida Traffic Crash Report completed by Trooper Ramos regarding the accident on February 17, 2022. (Doc. 5-1 at 3-8). The report does not include Plaintiff as a passenger in the vehicle. Plaintiff's complaint also reveals that there was a dispute or at least confusion between him and others involved regarding who was driving and whether Plaintiff was in the car at the time of the accident. (Doc. 5 at 95). In a "statement of true facts," Plaintiff's wife describes a conversation she witnessed and states, "[m]y husband said they were trying to say he was not in the car. Jacquez said no; how are they going to say that? We were all in the car. He said he didn't know what happened, Patrick. But Jacquez said it all happened so fast." (Doc. 5 at 95).

Plaintiff has also filed email correspondence between Trooper Ramos and Paul Silvestri, an attorney representing Plaintiff (presumably in a personal injury claim related to the accident). (Doc. 5-1 at 58-69). To summarize, the correspondence consists of Mr. Silvestri requesting that Trooper Ramos amend the crash report to include Plaintiff as a passenger, followed by Trooper Ramos repeatedly replying that the investigation was still ongoing and that he was gathering information from other troopers and the individuals involved in the accident. In an email dated May 6, 2022, Mr. Silvestri provided Trooper Ramos Plaintiff's phone number and address and then repeatedly sent emails requesting to follow up and

inquire whether the investigation had been completed. (Doc. 5-1 at 62). Finally, on July 1, 2022, Trooper Ramos replied, "I apologize that this investigation took so long. I can finally say that my investigation is complete. I paid your client a visit this evening and he was subsequently placed under arrest for insurance fraud at approximately 9:57 p.m." (Doc. 5-1 at 69).

These emails establish that Trooper Ramos was conducting an ongoing investigation and gathering information from numerous individuals regarding the accident, including other troopers, and that his investigation concluded with Plaintiff's arrest for insurance fraud. In other words, Plaintiff's complaint and exhibits appear to establish that Trooper Ramos acted prudently in conducting a thorough and reasonable investigation before placing Plaintiff under arrest for insurance fraud. The facts and circumstances within the arresting troopers' knowledge, and of which they had reasonably trustworthy information (including their own investigation of the accident on February 17, 2022, and their own observations while speaking with Plaintiff in person on the evening of July 1, 2022), could have caused prudent officers to believe that the Plaintiff had committed insurance fraud. The Court observes that Trooper Ramos is the "reporting officer" on the crash report. Notably, even Plaintiff's own allegations establish that there was a dispute or at least confusion among those involved in the accident regarding who was in the vehicle.

Further, even if there were not actual probable cause, I submit that the arresting officers had arguable probable cause, which is "all that is required for qualified immunity to be applicable to an arresting officer." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir.2001). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause

existed to arrest." *Id. (*quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir.1998) (internal citations omitted)). "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough*, 245 F.3d at 1302–03.

For these reasons, Plaintiff's claims for unlawful arrest or arrest without probable cause should be dismissed.

### C. Lack of Jurisdiction

Beyond the claims discussed above, Plaintiff has not alleged any other viable basis for his claims under federal law. Plaintiff asserts that the basis of jurisdiction is federal question and cites the following criminal statutes as the legal basis for his claims: (1) 18 U.S.C. § 1091 (regarding genocide); (2) 18 U.S.C. § 242 (relating to deprivation of rights under color of law); and (3) 18 U.S.C. § 2331(5) (defining domestic terrorism). However, private rights of action to enforce federal law can only be created by Congress. *See Morales v. U.S. Dist. Court for S. Dist. of Fla.*, 580 F. App'x 881, 886 (11th Cir. 2014). The text of a criminal statute must clearly demonstrate congressional intent to create both new rights and a private remedy. *Id.* None of the statutes cited by Plaintiff contain an intent to create a private cause of action, nor does Plaintiff identify any authority suggesting that they do allow for a private cause of action. Indeed, one of the statutes cited (18 U.S.C. § 2331(5) merely contains definitions.

Similarly, Plaintiff alleges that his claims are brought pursuant to the American Declaration on the Rights of Indigenous Peoples. However, declarations such as the American Declaration on the Rights of Indigenous Peoples do not provide a private right of action in the federal courts. *See Van Hope-el v. United States Dep't of State*, No. 1:18-CV-0441-

JLT, 2019 WL 295774, at *3 n.2 (E.D. Cal. Jan. 23, 2019), *aff'd sub nom. Hope-El v. U.S. Dep't of State*, No. 19-15311, 2019 WL 3941181 (9th Cir. June 26, 2019) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004); *United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009); *Bey v. Malec*, No. 18-cv-02626-SI;18-cv-02628-SI, 2018 WL 4585472, at *2 (N.D. Cal. Sept. 25, 2018); *Townsend v. New Jersey Transit & Amalgamated Transit Union*, No. 09-1832 (GEB), 2010 WL 3883304, at *5 (D.N.J. Sept. 27, 2010)).

Plaintiff also cites the United Nations Declaration on Human Rights and the International Convention on the Elimination of All Forms of Racial Discrimination. However, the general rule is that international agreements, including those benefitting private persons, do not create private rights or provide for private cause of action in domestic courts, whether through 28 U.S.C. § 1983 or otherwise. *See Gandara v. Bennett*, 528 F.3d 823, 828 (11th Cir. 2008).

### D. Challenges to State Court Proceedings Barred

Based on Plaintiff's allegations, it is unclear whether there were proceedings in state court arising from the incident described in the amended complaint. Plaintiff vaguely references "more interruptions of having to visit by force" the State Attorney. (Doc. 5 at 9). In any event, to the extent that Plaintiff may be challenging state court proceedings, the *Younger* abstention doctrine would apply. *See Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Under *Younger* and its progeny, district courts are instructed to "refrain from enjoining pending state court proceedings except under special circumstances." *Old Republic Union Insurance Co. v. Tillis Trucking Co., Inc.*, 124 F.3d 1258, 1261 (11th Cir.1997) (explaining that *Younger* abstention applies to injunctions and declaratory judgments that would effectively enjoin state proceedings). "*Younger* and its progeny reflect the longstanding

national public policy, based on principles of comity and federalism, of allowing state courts to try cases—already pending in state court—free from federal court interference." *Butler v. Ala. Judicial Inquiry Comm'n*, 245 F.3d 1257, 1261 (11th Cir. 2001). "[T]he *Younger* doctrine ... prevent[s] federal courts from being the grand overseers of state courts and court-like administration." *Wexler v. Lepore*, 385 F.3d 1336, 1341 (11th Cir. 2004).

Likewise, to the extent that Plaintiff may be challenging the final judgment of a state court, his claims would be barred by the *Rooker-Feldman* doctrine. The *Rooker–Feldman* doctrine stands for the proposition that "federal courts, other than the Supreme Court [of the United States], have no authority to review the final judgments of state courts." *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir.2000) (*en banc*). Indeed, *Rooker–Feldman* reinforces notions of federalism generally, and the statutory scheme of federal jurisdiction in particular, which "does not authorize district courts to exercise appellate jurisdiction over state-court judgments." *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 644 n. 3 (2002).

### E.  Claims Against Other Defendants

Due to the deficiencies in the complaint, it is unclear what the basis of claims would be against many of the defendants. For example, while it appears that Plaintiff has a grievance against many of the private citizens he names in the complaint, he fails to specify what cause of action he is alleging against them. The same is true for USAA Casualty Insurance Company, the State of Florida, the Sumter County Sheriff, and State Attorney William Gladson and Assistant State Attorney Stephen Fern. The Court declines to speculate about the nature of claims that Plaintiff may have intended to bring against these parties. That said, the Court observes that the State of Florida and the Sumter County Sheriff would be likely be

entitled to sovereign immunity and qualified immunity, respectively. Meanwhile, § 1983 claims against William Gladson and Stephen Fern would likely be barred by prosecutorial immunity, or qualified immunity, or both. *See, e.g., Ward v. Chafin*, No. 3:21-CV-111 (CAR), 2022 WL 3328875, at *4 (M.D. Ga. Aug. 11, 2022) (holding that prosecutors were entitled to prosecutorial immunity and qualified immunity as to claims for false arrest and false imprisonment under § 1983).

Under § 1915(e)(2)(B)(i), courts may dismiss as frivolous claims that are "based on an indisputably meritless legal theory" or "whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). Plaintiff has already been given one opportunity to amend, and the Court cannot perceive any possible basis on which the amended complaint may be further amended to allege a claim upon which relief can be granted. Thus, further amendments would be futile.

### III. Recommendation

Accordingly, and for the reasons explained above, I recommend that Plaintiff's motion to proceed in forma pauperis (Doc. 2) should be denied and the amended complaint dismissed.

Recommended in Ocala, Florida on February 6, 2023.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties